UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BOBBY J. SMITH,

                Plaintiff,

v.

UNKNOWN GOOSTREY, et al.,

                Defendants.

_____/

Case No. 1:22-cv-753

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing his complaint in the United States District Court for the Eastern District of Michigan.  By order entered on August 17, 2022 (ECF No. 4), the Eastern District of Michigan transferred the matter to this Court for further proceedings.  Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 7.)  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."  *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."  *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal.  *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

2

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan.  Plaintiff sues Acting Inspector Unknown Goostrey, Inspector Unknown Johnson, Assistant Deputy Wardens T. Page and Unknown Brege, and Corrections Officers Unknown Ward and Unknown Shine.  He sues all Defendants in their individual and official capacities.

In Plaintiff's complaint, he alleges that on September 30, 2021, Defendant Goostrey "called Plaintiff out to inquire about the Plaintiff's legal mail from his attorney."  (ECF No. 1, PageID.4.)  Plaintiff states that Defendant Goostrey's "tampering with Plaintiff's legal mail is a federal violation . . . for opening Plaintiff's legal mail without Plaintiff being present."  (*Id.*)  On October 5, 2021, Plaintiff filed a grievance regarding "a violation" that occurred on September 30, 2021.  (*Id.*, PageID.5.)[2]

---

[2] Plaintiff does not identify which "violation" he is referring to, however, presumably he is referring to his interaction with Defendant Goostrey on September 30, 2021, which involved his legal mail.

4

Subsequently, on October 19, 2021, Plaintiff was stabbed, and he spoke to a prison counselor in late October or early November to request a transfer to another prison. Plaintiff states that Prisoner Counselor Short (not a party) sent an email to Defendant Johnson expressing Plaintiff's concern for his safety. Defendant Johnson indicated that Plaintiff had to give her some information regarding who was bringing drugs into the prison in exchange for assistance. Plaintiff states that he did not have any information to provide, so Defendant Johnson refused to help. Prisoner Counselor Short saw that Plaintiff continued to be housed on Baldwin Unit where Prisoner Counselor Short worked and could watch over him.

On December 8, 2021, Defendants Goostrey and Johnson had Plaintiff moved to another unit against Plaintiff's wishes. Less than five hours after Plaintiff was moved, while Plaintiff was on the phone, he was attacked by another prisoner. Shortly thereafter, Plaintiff was moved to segregation and all his property was stolen from his cell. Plaintiff claims that this was the direct result of the failure to follow prison policy and secure Plaintiff's property by Defendants Ward and Shine. Plaintiff states that Defendants Ward and Shine work under the supervision of Defendants Goostrey and Johnson.

While in segregation, Corrections Officer Shabazz (not a party) reviewed the surveillance camera footage and determined the identity of two of the inmates that had stolen Plaintiff's property and reported it. However, none of Plaintiff's property was recovered. Plaintiff's legal work was later found in the unit shower and was turned over to Defendants Goostrey and Johnson, who went through the material.

On December 13, 2021, at 11:40 a.m., Defendants Goostrey and Johnson had Plaintiff brought into the office and attempted to question him about who was bringing drugs into the prison.  Plaintiff again stated that he did not have any information, so Defendants Goostrey and Johnson told him that he would not be released from segregation and would eventually be transferred to a prison so far away that his family would have difficulty visiting.

On December 15, 2021, Defendant Brege went to Plaintiff's cell in segregation and reiterated that Plaintiff would be kept in segregation until he could be transferred.  On December 16, 2021, Plaintiff filed a grievance on Defendants Goostrey and Johnson for keeping him in segregation.  On January 3, 2022, Defendant Page called Plaintiff to the office and asked Plaintiff if he would sign off on the grievance against Defendants Goostrey and Johnson.  Plaintiff refused and Defendant Page smiled and said that Plaintiff should have done so.

Plaintiff asserts that Defendants engaged in cruel and unusual punishment in violation of the Eighth Amendment, retaliated against him in violation of the First Amendment, and violated his rights under the Fourteenth Amendment.  Plaintiff also claims that Defendants violated state law.  Further, liberally construing Plaintiff's complaint, as the Court is required to do, the Court construes Plaintiff's complaint to raise an access to the courts claim and a claim regarding the interference with his legal mail.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Retaliation

Plaintiff asserts that Defendants' conduct was motivated by a desire to retaliate against him for filing grievances and complaints. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In support of his retaliation claims, Plaintiff alleges that on October 5, 2021, he filed a grievance regarding "a violation" that occurred on September 30, 2021. (ECF No. 1, PageID.5.)  As to the first element of a retaliation claim, an inmate has

a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Thus, the Court concludes that Plaintiff's act of filing a grievance constituted protected conduct for purposes of a retaliation claim.

However, Plaintiff fails to allege any facts showing that any of the Defendants' subsequent actions were motivated by a desire to retaliate against him as a result of the October 5, 2021, grievance. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory

9

motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). The Court concludes that Plaintiff has failed to state a retaliation claim based on his conduct in filing a grievance on October 5, 2021.

Plaintiff also claims that he engaged in protected conduct when he refused to provide information regarding the identity of individuals who were smuggling drugs into the prison. However, it does not appear that such conduct is considered protected conduct for purposes of a retaliation claim.

> Neither the United States Supreme Court, the Sixth Circuit, nor the Eastern District of Michigan has held that there is a constitutionally protected right to refuse to be an informant. To the contrary, one case in this district has held that "a prisoner's refusal to serve as an informant is not constitutionally protected conduct, and therefore cannot be used as a basis to substantiate a retaliation claim." *Erwin v. Marberry*, 2007 WL 4098201, *5 (E.D. Mich.2007).
>
> Cases from outside the Sixth Circuit are split on the question. In *David v. Hill*, 401 F.Supp.2d 749 (S.D.Tex.2005), the court noted a long line of cases recognizing the dangers of a prison inmate being labeled a "snitch," and the resulting "threat to an inmate's health and safety in violation of the Eighth Amendment." *Id.*, at 756-57. The court suggested that "[b]ecause being labeled a snitch could place an inmate's life in danger, it follows that he would have a protected interest in not being labeled one," and that in terms of whether an inmate has the right to refuse to become an informant, the "claim is a logical extension of failure to protect case law; that he not be forced to participate in activities that place his life in danger." *Id.* at 757. Ultimately, however, the court "assume[d] without deciding that plaintiff has a constitutional right to not participate in a prison investigation."[] *Id. See also Jackson v. Johnson*, 15 F. Supp. 2d 341, 364 (S.D.N.Y.1998) (assumes without deciding that an inmate has a constitutional right to not be an

informant). In *Cooper v. Beard,* 2006 WL 3208783, *12 (E.D. Pa.2006), the court held that "[p]rison officials may not constitutionally require an inmate to participate actively in a sting operation against corrupt prison guards."

On the other hand, the Ninth Circuit in *United States v. Paguio,* 114 F.3d 928, 930 (9th Cir.1997), held that "[t]here is no constitutional right not to 'snitch.'" *See also United States v. Gardner,* 611 F.2d 770, 773 (9th Cir.1980).

*Welch v. Chapman*, No. 07-cv-12334, 2008 WL 544618, at *4–5 (E.D. Mich. Feb. 27, 2008) (footnote omitted).

Even assuming that Plaintiff had engaged in protected conduct when he refused to provide information regarding drug smuggling into LRF, Plaintiff has not sufficiently alleged adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (6th Cir. 2002).

First, Plaintiff alleges that following his initial refusal to provide information regarding smuggling at the prison, he was moved from B unit to C unit where he was attacked by another prisoner. However, Plaintiff fails to allege any facts showing that Defendants were aware of the likelihood that Plaintiff would be attacked if transferred to C unit. Nor does Plaintiff allege any other facts showing that such a transfer constituted an adverse action, such as a difference in the security level or conditions in each of the units. Although a transfer to a more restrictive living environment with fewer privileges would deter a person of ordinary firmness from

11

exercising the constitutional right to file grievances, s*ee Hill v. Lappin,* 630 F.3d 468, 475 (6th Cir. 2010) (*citing Thaddeus–X,* 175 F.3d at 396 ("In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse."); *King v. Zamiara,* 150 F. App'x 485, 494 (6th Cir., Oct. 7, 2005) (holding that an increase in the prisoner's security-level classification was an adverse action because it would result in more restrictions and fewer privileges)), Plaintiff fails to allege any facts showing that he was being subjected to such a transfer.

Plaintiff attaches copies of grievance number LRF 21-121822-17B and the responses at steps I, II, and III to his complaint.  (ECF No. 1, PageID.18–23.)  In the step I response, Defendant Page noted that Plaintiff was claiming that bad things had happened to him, including being attacked by another prisoner and having his property stolen from him, because he refused to be an informant for Defendants Goostrey and Johnson.  (*Id.*, PageID.19.)  However, there is no indication that any of the named Defendants purposely caused these injuries to Plaintiff in order to retaliate against him.  As noted above, there is no indication that Defendants were aware that Plaintiff would be attacked if moved to Unit C.  In addition, Plaintiff states that the loss of his property was the result of Defendants Ward and Shine failing to properly secure his property but fails to allege any facts showing that this was anything more than negligence, much less that it was purposeful and retaliatory.  The fact that Defendants Ward and Shine were supervised by Defendants Goostrey and Johnson is insufficient to show that they were aware of his refusal to give Defendants Goostrey and Johnson information regarding illegal drug smuggling, much less that

12

Defendants Ward and Shine failed to secure his property because of a desire to retaliate against him because of this refusal.

Plaintiff also claimed that he was told he would not be released from segregation if he did not provide the requested information. (*Id*.) However, Defendant Page also noted:

> Prisoner Smith was interviewed in SEG by Inspector Goostrey and I. Prisoner Smith was offered to sign a protection waiver and return to GP level II. Prisoner Smith stated, his time here at LRF has ran out and he would not be willing to go back to GP Level II or Level IV. When prisoner Smith was asked why, he stated, he never thought what happened to him would have happened, because of who he is, and by that happening he know [sic] it's time for him to go.

> Prisoner Smith is still in Segregation, because he has refuse [sic] to leave and want [sic] to be transferred from this facility.

(*Id*.) In the decision summary, Defendant Page stated that Plaintiff's step I grievance was denied because when asked by Defendant Brege, he refused to leave segregation and remained there of his own free will. (*Id*.) The March 8, 2022, step II response by the LRF warden noted that Plaintiff had been released to Level II and the step III response affirmed the denial of Plaintiff's grievance. (*Id*., PageID.20–23.) Finally, the Court notes that by the time Plaintiff filed his complaint on August 16, 2022, he had been transferred from LRF to IBC, which was the relief he had been seeking. Based on the foregoing, the Court concludes that Plaintiff has failed to allege facts showing that he was subjected to an adverse action because of his refusal to serve as a prison informant or that Defendants acted with a retaliatory motive.

13

Accordingly, for the reasons set forth above, Plaintiff's First Amendment retaliation claim will be dismissed.

**B.     Access to the Courts**

The Court liberally construes Plaintiff's complaint to include a First Amendment right of access to the courts claim related to the seizure of his legal documents after they were discovered in the unit shower. Plaintiff also vaguely suggests that Defendant Goostrey violated his right to access the courts as related to Defendant Goostrey's handling of Plaintiff's legal mail on September 30, 2021.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the

14

shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff fails to allege any details regarding the nature and content of the documents that were found in the unit shower or of the documents that he had received on September 30, 2021. Because Plaintiff fails to allege any details regarding the nature and content of these documents, Plaintiff fails to allege any facts to show that he suffered an actual injury to a non-frivolous pending or contemplated actions. Accordingly, Plaintiff's access to the courts claim is properly dismissed.

15

## C.    Interference with Legal Mail

Liberally construing Plaintiff's complaint, he avers that his legal mail was interfered with by Defendant Goostrey on September 30, 2021, and by Defendants Johnson and Goostrey when they recovered Plaintiff's documents in the unit shower.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

Plaintiff's allegations regarding Defendants' alleged interference with his legal mail are scarce. It appears that Plaintiff believes that Defendant Goostrey opened Plaintiff's legal mail outside of his presence on September 30, 2021, and that Defendants Johnson and Goostrey looked at Plaintiff's legal mail outside of Plaintiff's presence when Defendants found documents in the unit shower.

The ability of a prisoner "to receive materials of a legal nature" implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996); *see Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the

attorney-client privilege, and the right to access the courts).  Courts have therefore extended protections to prisoners' legal mail that do not exist for general mail.  For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu*, 87 F.3d at 174 (citation omitted).

The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado*, 992 F.2d at 609), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing *Sallier*, 343 F.3d at 879–80; *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment.  *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing

*Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

In this action, Plaintiff suggests that on one occasion, Defendant Goostrey opened Plaintiff's legal mail outside of Plaintiff's presence, and that when Plaintiff's legal mail was recovered from the unit shower, Defendants Johnson and Goostrey went through the material.  The Court recognizes that legal mail is entitled to additional protections and that it is possible that under some circumstances, even one instance of improperly processing legal mail could violate an inmate's constitutional rights.  However, as explained below, the facts alleged by Plaintiff are not such a circumstance.

Plaintiff fails to allege any facts to suggest a blatant disregard for mail handling by Defendants.  Specifically, under the circumstances alleged by Plaintiff—in which Plaintiff attributes no improper motive or pattern of action to Defendant Goostrey—Defendant Goostrey's opening of Plaintiff's legal mail outside of Plaintiff's presence on one occasion is insufficient to show that Plaintiff's constitutional rights were violated.  *See Anderson v. Andrews*, No. 2:09-cv-109, 2010 WL 3475030, at *8 (W.D. Mich. June 29, 2010) ("[T]he opening of one piece of properly marked legal mail outside the prisoner's presence is not enough to state a claim."), *report & recommendation adopted*, 2010 WL 3474988 (W.D. Mich. Sept. 2, 2010).  Likewise, to the extent that Defendants Johnson and Goostrey went through Plaintiff's legal mail after it was recovered in the unit shower, the facts alleged by Plaintiff do not suggest that Defendants violated Plaintiff's constitutional rights when they went through

Plaintiff's documents, presumably to determine what the documents were and to whom they belonged.  *See Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted))  Indeed, under the circumstances alleged by Plaintiff, it appears that Defendants Johnson and Goostrey would necessarily have to look through the documents recovered in the unit shower to determine what to do with these.

Accordingly, for the foregoing reasons, Plaintiff's claims regarding the interference with his legal mail will be dismissed.

### D.     Eighth Amendment

Plaintiff claims that Defendants violated his rights under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation

omitted).   Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.   "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).   As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).   The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.   To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.   Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.   "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a

20

prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Initially, the Court notes that Plaintiff appears to be asserting that on October 19, 2021, Defendant Johnson refused to help Plaintiff get a transfer to another facility after he was stabbed, and that Defendants Johnson and Goostrey had Plaintiff transferred out of Baldwin unit to a unit where Plaintiff was stabbed within five hours.  However, Plaintiff fails to allege any facts showing that Defendants Johnson and Goostrey were aware of any risk to Plaintiff as a result of being transferred out of Baldwin unit.  Plaintiff also fails to allege sufficient facts to show that Defendant Johnson was aware of any risk that warranted transferring Plaintiff to another facility, rather than transferring him to a different unit at LRF.  Because Plaintiff has failed to allege facts showing that Defendants Johnson and Goostrey were subjectively aware of such a risk, his Eighth Amendment claims against them for failing to protect him are properly dismissed.

The Court also liberally construes Plaintiff's complaint to include an Eighth Amendment claim regarding his placement in segregation.  Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347).  Although prisoners are denied certain privileges as a result of placement in segregation, Plaintiff does not allege or show that he is being denied basic human

needs and requirements.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation.  *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  For all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment claim, and this claim will be dismissed.

### E. Due Process

To the extent that Plaintiff is claiming that his placement in segregation violated the Fourteenth Amendment, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano,* 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), *overruled on other grounds by Edwards v. Balisok*, 520 U.S. 641 (1997), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 486–87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds).

Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484-86. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g., Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465

F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

In this case, Plaintiff was placed in segregation on December 8, 2021.  The March 8, 2022, step II response by the LRF warden noted that Plaintiff had been released from segregation by then. (ECF No. 1, PageID.21.) Consequently, the Court concludes that Plaintiff was in segregation for no more than three months.  Nowhere in his complaint does Plaintiff allege the type of atypical and significant hardship which would implicate the Due Process Clause.

Moreover, to the extent that Plaintiff is claiming that the seizure of his legal work violated the Fourteenth Amendment, this due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit

authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's Fourteenth Amendment due process claim premised upon the loss of his property will be dismissed.

### F.    Official Capacity

Plaintiff brings claims against each Defendant in both their individual and official capacities. For the reasons set forth below, the Court will dismiss all official capacity claims.

25

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)).  An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66.  Each Defendant named in this case was employed by the MDOC during the pertinent time, thus Plaintiff's official capacity claims against them are treated as claims against the MDOC itself.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which includes the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54.  Therefore, Plaintiff's official capacity claims seeking monetary relief are properly dismissed on grounds of immunity.

While a suit against an individual in his official capacity is ordinarily equivalent to a suit brought against the governmental entity, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), an official-capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity, *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that Eleventh Amendment immunity does not bar prospective injunctive relief against a state official).  As the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective declaratory or injunctive relief is not treated as an action against the state.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).  Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority.  *Id.*

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  Here, Plaintiff's complaint does not plausibly suggest *any* violations of federal law, let alone violations that are ongoing.  Moreover, as noted above, Plaintiff has been transferred to another institution since filing this complaint, and he is no longer under the control of the named Defendants and is not subject to any further actions by those Defendants.  Therefore, Plaintiff cannot maintain his claims for injunctive and declaratory relief against Defendants, and the Court will dismiss these claims.  *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained).

Accordingly, for these reasons, the Court will dismiss Plaintiff's official capacity claims in their entirety.

### G.    State Law Claims

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertions that Defendants violated state law or MDOC policy therefore fail to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)).  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   December 12, 2022                    /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge